Good afternoon, Your Honors. Appreciate the court. Frank Sproul is appearing for the petitioner. Judging by the last case, I assume you want me to address the sentencing issue and the preclusion of withholding a removal. Indeed, that is a central issue in the case. In this case, Congress obviously decided that people that were sentenced to five years will have the Carthaginian result that they'll never be able to bring their withholding of removal. That presumes that the sentencing judge looked at the severity of the case, the depth of the defendant's involvement, and made a nuanced judgment. In this case, that didn't happen. Basically, what the court did was they did an indeterminate sentence of the minimum and the maximum, then imposed no time at all. The entire case took about six or seven months. The first amended the first complaint was in February. An amended complaint was in July. Judgment was September 11, 2012. Thirty-six days later, he was before the IJ. So clearly, this is an example where there was no the judge did not say, I'm looking at the severity of the case. I'm going to make a nuanced judgment and sentence you to five years. I mean, what he did in this case, I'm a little bit out of my league. Nevada is a little different than California. But in California, when there's a possibility of State prison and the defendant is granted probation, what they do is imposition of sentence suspended, the entire possibility of State prison, and then they give him probation and then grant a county jail sentence. In this case, we can't say that the judge looked at this case, at the particular facts of the case, and decided this defendant deserved five years. Quite the contrary. In fact, obviously, the plan was just to simply suspend all imposition of sentence. I mean, he basically got probation. So, I mean, there's a real disconnect between Congress's intent to say the worst of the worst, people that were sentenced to five years for the severity of the crime, the depth of their involvement, perhaps their prior convictions. That didn't happen here. I mean, this is one of the problems when you've got the sentencing, criminal sentencing schemes of 50 States and trying to fit it into one Federal definition. And so, I mean, I guess I would say to some extent, some of the cases deal with the indeterminate sentence, and you pick the highest amount. I would say you're asking, I mean, how do you – your approach could not be squared with what the – Well, two things. A few cases that we do have, you know, the Echeverria-Escobar, which is a Nevada case. I mean, basically, we are dealing with the Nevada scheme. There, the judge did have the opportunity to sentence him to up to five years. It's the same NRS-193-130C, and they gave him 12 to 32. Did not give him the full amount. Here, the judge simply said, I'm sentencing you to the minimum and the maximum. There's no sense that there was any nuanced judgment here. So I guess part of my argument would be, you know, in criminal law, death is different. In immigration, asylum should be different. The idea that someone who essentially received incredible leniency from the sentencing judge is denied the opportunity to present withholding, which the BIA is called as a life-or-death consequences. So I think – I mean, those other cases that deal with the indeterminate Echeverria-Escobar, and they did not occur in this context. They occurred in reentry after deportation. The Arellino-Torres case dealt with the potential sentence that would transmute simple possession into an aggravated felony under the Federal grounds. So we really don't have any cases that deal with the indeterminate, determinate sentencing in the withholding of removal preclusion context. And I think if you look at this case, again, the idea that this is, you know, about the harsher sanction you can get in terms of asylum and withholding. You simply can't bring it. And that clearly does not see a case here. So, I mean, I think this ought to be remanded to number one. There is nothing – you know, all we have here is an amended complaint and the judgment, nothing more, nothing less. So we have no idea what – you know, one of the bitter ironies in this case is that if it's not per se particularly serious, one of the factors that the I.J. looks at is the sentencing decisions, right? Here, if we were in the per se land, you know, the judge showed extraordinary leniency, you know. He literally got no sentence to speak of. He got probation. He was released. So I would reserve my time. Robertson, certainly. May it please the Court. My name is Andrew O'Malley. I represent the Attorney General of the United States. The Court should not have a petition for review because the agency properly concluded that that petitioner was convicted of a per se particularly serious crime. The agency acted within its discretion by denying Petitioner's motion to continue and motion to change venue. And substantial evidence supports the denial of CAT deferral. With respect to the particularly serious crime determination, Petitioner has not demonstrated that his – what he concedes to be an aggravated felony is not a per se particularly serious crime. He was sentenced to an indeterminate sentence of 24 to 60 months, which is 5 years. And when you get to that 5 years, that is a per se particularly serious crime when we're dealing with an aggravated felony. Look, consistent with our discussion in the last case, why shouldn't we look beyond the conviction to what the Court actually did under state law? Because we have the determination that this is a per se particularly serious crime. And then that is within the realm of what Congress can decide and what the Board can decide is that when somebody has a sentence of 5 years or more for an aggravated felony, that is, by law, a particularly serious crime. We don't get into the underlying facts of the crime. Well, we have a bit of a circuit split on that, and you would agree. In other words, the Fifth Circuit has taken the position that you look to the maximum. But the Sixth Circuit has taken the position that you look to what the sentencing would be under state law, how state law applies. Well, and we, as we argue here in our brief, when you look at Nevada state law, they are, he's eligible for parole at the minimum. But if he doesn't, if he's, when he's not paroled, it is the maximum, which gets him up to the 5 years. So that's consistent with the consideration that for the indeterminate sentence, it's considered to be for the maximum penalty for immigration purposes. Would you agree that we should look to Nevada law? I think that's consistent with the way that this Court has treated it, and it's consistent with the way that the Board has treated it in the past. I don't know if it's necessary, but that has happened in the past. We note that in our brief, there's Board decisions looking to Massachusetts law, Arizona law, I believe, as well, for that determination. But I would note that we are in the context here of relief from removal. So it's Petitioner's burden to show that this is not a particularly serious crime. He has not at any time pointed to anything in Nevada state law that would say, this is not a particularly serious crime. This indeterminate sentence cannot be considered for the maximum amount. That's his burden. He did not meet that. He did not try to meet that before the agency. And again, the Court has, the Board has long held that a suspended sentence, there's argument with respect to whether his suspended sentence counts. That's immaterial for immigration purposes. That counts. And the indeterminate sentence should go to the maximum of five years. With respect to the continuance, would you like me to get into the continuance issue? The agency acted within its discretion in denying Petitioner's motion for continuance. He had a full year between the time that the hearing was set and the time that the hearing occurred within which to prepare. He chose to switch attorneys three weeks before, two weeks before the hearing. There's no indication that any evidence that is material was not submitted. There's no indication that any witnesses were unable to testify because there was the denial of the continuance. Petitioner testified. Petitioner's counsel represented him at the hearing. And the IJ was ready to go with the hearing. And if the case was continued, that would just delay the process for somebody who admittedly is an aggravated felon, a priority. With respect to the venue change, the same considerations apply. You know, the IJ was ready to go. There was no reason to change venue. Petitioner was in the courtroom. Petitioner's counsel was appearing by telephone. There was scant evidence that Petitioner was actually residing in San Francisco as opposed to Reno, Nevada. And again, the case had been pending for a year within which to prepare, and he didn't move to change venue until right before. If it had changed venue to the San Francisco court, it would have gone back into the line for another master calendar hearing and another merits hearing, delaying the process even further. There's no indication that Petitioner was prejudiced by the denial of the motion to change venue. With respect to the deferral of removal under the CAT, there's no compelling evidence in the record that this individual is going to be tortured in Mexico. There's definitely evidence that Petitioner suffered very unfortunate circumstances over 20 years ago in the past. There's no indication that that individual is going to seek him out. The objective evidence in the record suggests that there is some freedom among the community of homosexual males in Mexico, that they can live openly and freely. In fact, Petitioner's own submitted evidence indicates that that is the case. That there are pockets of problems, yes, but that the situation is getting better. There's nothing to indicate that, more likely than not, he will be tortured in Mexico. Are there any further questions? Thank you very much. Thank you. Very briefly. Just very briefly on the indeterminate sentence the counsel spoke about. You determine it because of the possibility of parole. There was no parole. He wasn't sentenced to prison. He got probation. If I could just very briefly go to the continuance. Basically, the prejudice wasn't so much to the Petitioner as to me. I was retained 12 days before the hearing. There would have been no particular prejudice except time. The gentleman was out of custody to the credit of the service. He was HIV positive. They had him out. I would have done things very differently. I mean, in terms of Mexico, the homophobia of the gangs is considerably worse. I submitted some evidence of extrajudicial killings. Despite, you know, any cosmetic legislative changes, the malignancy of homophobia in Mexico still exists. I never had the chance to do that. Again, I was 12 days before. I mean, I really hadn't had a chance to work with him. The I.J. on page 92 offered to conduct a direct examination himself. My concern was I'd have to split my fee with the judge. I mean, I simply wasn't — there was prejudice to me, no particular prejudice to the Court. We understand time is important, but in something of this magnitude, I think the I.J. abused his discretion, not simply. And as I made it very clear, I said, I'll take a brief continuance. If you're not going to change venue, give me a month and a half. Just give me something more than 12 days, and I'll submit the matter. Okay. Thank you, counsel. HSRE will be submitted for decision.
judges: Fernandez, Thomas, Ezra